UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CHRISTOPHER WOODARD                    CIVIL ACTION NO.
AND
STEPHANIE WOODARD ERICKSON

VERSUS                                 JUDGE

WOOODARD VILLA, INC.                   MAGISTRATE JUDGE

COMPLAINT

Plaintiffs, Christopher Woodard ("Woodard) and Stephanie Woodard Erickson ("Erickson") for their complaint against Woodard Villa, Inc. ("Woodard Villa") with respect, allege:

PARTIES, JURISDICTION AND VENUE

1.

Woodard is a resident and citizen of the State of Texas and Erickson is a resident and citizen of the State of Arizona. Woodard Villa is a Louisiana corporation whose principal place of business is in Bienville Parish, Louisiana. Accordingly, jurisdiction is proper in this court based on diversity of citizenship and the amount in controversy exceeds $75,000.00. (28 USC §1332) Woodard Villa is subject to personal jurisdiction in this judicial district. Therefore, venue is proper in this judicial district pursuant to 28 USC §1391.

NATURE OF ACTION

2.

This suit arises under La. R.S.12:1-1435, et. seq., ("the Louisiana Statute"). Plaintiffs are oppressed shareholders, as contemplated by the Louisiana Statute.

3.

As oppressed shareholders, Woodard and Erickson notified Woodard Villa of their withdrawal from the corporation on the grounds of oppression and offered to sell their shares of Class B common stock of Woodard Villa to Woodard Villa for stated amounts.

4.

Woodard Villa refused to acknowledge the withdrawal or to purchase the offered shares.

## PERTINENT FACTS

### Nature of Woodard Villa, Inc. Stock

5.

On or about December 15, 1977, E.S. Woodard and his then wife, Mollie C. Woodard, formed Woodard Villa, Inc. as a Louisiana corporation.

6.

The Articles of Incorporation of Woodard Villa, Inc. provided for two classes of stock, Class A Common Stock and Class B Common Stock.

7.

The holders of the Class A Common Stock have full voting power for all purposes, and the holders of the Class B Common Stock have no voting power.

8.

E.S. Woodard and Mollie C. Woodard were the original owners and holders of the Class A Common Stock of Woodard Villa.

9.

Upon the death of Mollie C. Woodard in 1985, pursuant to the terms of her will, E.S. Woodard became the sole owner of all the Class A Common Stock of Woodard Villa.

10.

Between the date of Mollie C. Woodard's death in 1985 and until his death on September 2, 2013, E.S. Woodard totally managed and controlled Woodard Villa.

### Trusts for Class B Common Stock

11.

Shortly after the creation of Woodard Villa, E.S. Woodard and Mollie C. Woodard transferred all of the Class B shares of Woodard Villa common stock to trusts for the benefit of their children and grandchildren, of which the children and grandchildren were named beneficiaries of the principal and income.

12.

Plaintiffs were beneficiaries of the trusts created for them and which owned Class B shares of common stock of Woodard Villa, Inc. ("the Class B Trusts").

13.

The original trustees of each of the Class B Trusts were E.S. Woodard, Mollie C. Woodard and E.S. Woodard, Jr.

14.

When Mollie C. Woodard died in 1985, no one replaced her as a trustee of the Class B Trusts which owned the Class B common shares of Woodard Villa.

15.

Although E. S. Woodard, Jr., was named as an original trustee of the Class B Trusts, he never learned of that fact until approximately 2011, and he resigned as trustee of the Class B Trusts shortly after learning he was a trustee.

16.

The Class B Trusts for plaintiffs did not terminate until the death of E.S. Woodard on September 2, 2013.

## Total Control of Corporation and Trusts

17.

E.S. Woodard was sole shareholder of the Class A voting stock of Woodard Villa, was the President and sole Director of Woodard Villa, and he was the sole acting trustee of the Class B Trusts which owned the Class B shares of common stock of Woodard Villa, Inc.

18.

Consequently, after Mollie Woodard's death in 1985 until his death on September 2, 2013, E.S. Woodard was in total control of Woodard Villa and of all of the Class B Trusts.

19.

Even though Woodard Villa was a very profitable company, E.S. Woodard refused to cause Woodard Villa to pay any dividends or make other payments for the beneficiaries of the Class B Trusts, including plaintiffs.

## Abuse and Mismanagement of Woodard Villa

20.

Not only did plaintiffs receive no economic benefits as beneficiaries of the Class B Trusts, Woodard Villa did not provide plaintiffs with any information about Woodard Villa until after E.S. Woodard died in 2013.

21.

While E.S. Woodard was in total control of Woodard Villa, Woodard Villa paid salaries, expenses and other costs and charges not related to the business of Woodard Villa and, therefore, those charges should not have been, and still should not be, treated as ordinary business expenses of Woodard Villa. Woodard Villa has continued to make such improper payments.

22.

Those charges were not, and are not, properly deductible in determining the net income of Woodard Villa.

*Payment of Excessive Salaries and "Independent Contractors"*

23.

Woodard Villa was, and is, paying excessive salaries to one or more of its employees or so-called "independent contractors".

*Improper Payments for Mrs. Woodard*

24.

The widow of E.S. Woodard, Larene Woodard, is elderly, unable to take care of herself and requires sitters and other assistance 24 hours per day, seven days per week.

25.

Larene Woodard is not an employee, shareholder or director of Woodard Villa and does not provide any services to Woodard Villa.

26.

Before December 31, 2013, Woodard Villa wrongfully paid for all of the costs related to the care of Larene Woodard, and such costs are not ordinary or necessary business expenses of Woodard Villa.

27.

Although one or more officers or directors of Woodard Villa told shareholders that Mrs. Woodard or others reimburse the corporation for the wrongful expenditures it made on behalf of Mrs. Woodard, no such payment has been made.

28.

Because of the wrongful payments on behalf of Mrs. Woodard, Woodard Villa was deprived of substantial income during the years such payments were made.

29.

Woodard Villa also is paying the expenses of the residence where Larene Woodard lives. Such payments are not ordinary or necessary business expenses of Woodard Villa.

30.

Woodard Villa deducts the costs of maintaining and operating Mrs. Woodard's residence as legitimate business expenses, thereby reducing the net income of Woodard Villa, to the detriment of plaintiffs.

*Wrongful Classification of Payments*

31.

E.S. Woodard died on September 2, 2013, and many family members attended Woodard's funeral in Ringgold, Louisiana.

32.

Following Mr. Woodard's funeral, the shareholders of the Class A and Class B common stock of Woodard Villa held a shareholders meeting.

33.

Following the shareholders meeting, Woodard Villa paid all of the shareholders an "attendance fee" of $115,000.00 each.

34.

Woodard Villa deducted the amount of the attendance fee paid to the shareholders as ordinary and necessary business expenses when, in fact, the payments should have been classified as dividends.

35.

Even though the attendance fee payment was a disguised, wrongfully-described dividend, and even though the shareholders of the Class B common stock of Woodard Villa owned varying numbers of shares, all shareholders received the same amount for the purported attendance fee, rather than an amount based upon the number of shares of Class B common stock of Woodard Villa owned by them, and, also, without regard to how near or how far each shareholder lived to the meeting location in Ringgold, Louisina.

36.

Erickson owns 1,986 shares and Woodard owns 893 shares of the Class B common stock of Woodard Villa.

37.

Even though they own different amounts of shares of Class B stock, Erickson and Woodard received the same amount as the so-called attendance fee, rather than an amount based on the number of Class B shares they own.

38.

Erickson and Woodard asked Woodard Villa to reclassify the attendance fee as a dividend, which it was, so that they could report the payment as a dividend, rather than ordinary income, on their 2013 United States Income Tax Returns.

39.

Woodard Villa refused to classify the attendance fee as a dividend.

40.

Because Woodard Villa did not classify the attendance fee as a dividend, as shareholders, Woodard and Erickson had to report the attendance fee as ordinary income, rather than as a dividend, thereby causing them to pay a higher income tax on that income than they would have had the payment been made as a dividend.

41.

By wrongfully declaring the attendance fee as an ordinary and necessary business expense and deducting it from its gross income on its 2013 United States Income Tax Return, the officers and directors of Woodard Villa subjected Woodard Villa to potential fines and penalties from the United States Internal Revenue Service.

*Wrongful Accumulation of Income*

42.

Woodard Villa has current assets worth approximately $12,000,000.00.  The company's primary assets consist of cash ($4,000,000.00), land and timber ($4,000,000.00) and mineral rights ($4,000,000.00).

43.

Woodard Villa does not have any day to day operating activities, or any significant expenses.

44.

Even though the company has significant assets and no liabilities, it unreasonably has accumulated income and refused to pay meaningful dividends to plaintiffs and the other shareholders.

*Refusal to Allow Records Inspection*

45.

Woodard Villa has failed and refused to allow plaintiffs to inspect its books and records without first signing a confidentiality agreement.

*Exorbitant Directors' Fees*

46.

Woodard Villa pays its directors fees which are exorbitant and not justified by the minimum activities the directors perform.

47.

Such unreasonable directors' fees reduce the amount of money which otherwise would be available for the payment of dividends to the shareholders of the common stock of Woodard Villa.

*Robert Mitchell, III's Personal Expenses*

48.

Pursuant to the terms of his last will and testament, E.S. Woodard's executor transferred all of the Class A common stock of Woodard Villa to ESWS, LLC, which was owned solely by E.S. Woodard.

49.

In his will, E.S. Woodard gave all of his interest in ESWS, LLC to Robert Mitchell, III and Lauren Richardson.

50.

Robert Mitchell, III is the President and a director of Woodard Villa.

51.

Upon information and belief, Woodard Villa improperly pays personal, non-business expenses of its president, Robert Mitchell, III.

*Wrongful Payment of Funeral Expenses*

52.

Woodard Villa improperly paid the funeral expenses of E.S. Woodard in 2013. Such payments were not ordinary or necessary expenses of Woodard Villa and reduced the amount of money Woodard Villa otherwise would have available for payment of dividends to its shareholders.

**PLAINTIFFS' ARE ENTITLED TO RELIEF PROVIDED BY
LA. R.S. 12:1-1435, ET SEQ.**

53.

All of the foregoing acts and omissions of Woodard Villa, including others which will be revealed during discovery, constitute oppression of Erickson and Woodard, as shareholders of Woodard Villa. When considered as a whole, beginning with the acts of Woodard Villa when E.S. Woodard was the controlling shareholder and continuing through today under the management of its current officers and directors, Woodard Villa's actions and omissions are plainly incompatible with Louisiana's requirement that Woodard Villa deal fairly and in good faith with plaintiffs.

54.

Because they are oppressed shareholders, pursuant to the provisions of La. R.S. 12:1-1435, on or about March 10, 2015 and March 16, 2015, Woodard and Erickson, respectively, notified Woodard Villa they were withdrawing as shareholders from the corporation on the grounds of oppression and offered to sell their shares to Woodard Villa for the amounts stated in their notice letters.

55.

More than sixty (60) days have elapsed since Woodard Villa received the notices of withdrawal from plaintiffs, and Woodard Villa has failed and refused to acknowledge and accept the notice of withdrawal.

56.

Pursuant to the provisions of La. R.S. 12:1-1435(G), plaintiffs seek a judgment of this Court recognizing the rights of plaintiffs to withdraw as shareholders of Woodard Villa on the grounds of oppression and ordering Woodard Villa to purchase the shares of Class B common stock owned by plaintiffs for the fair value of those shares, as provided by law.

**PRAYER FOR RELIEF**

57.

WHEREFORE, CHRISTOPHER WOODARD and STEPHANIE WOODARD ERICKSON PRAY for judgment herein in their favor, and against WOODARD VILLA, INC., as follows:

1. Ordering Woodard Villa, Inc. to recognize that plaintiffs have withdrawn as shareholders of Class B common stock of Woodard Villa, Inc.;

2. Ordering Woodard Villa, Inc. to play plaintiffs the fair value of their shares of Class B common stock of Woodard Villa, Inc. within a time set by the Court; and

3. For such equitable, necessary and general relief as may be proper.

Respectfully submitted,

By: */s/ John M. Madison, Jr.*
   John M. Madison, Jr. (#8836)
   Charles E. Tabor (#31984)
   Reid A. Jones (#34611)
Of
**WIENER WEISS & MADISON**
A Professional Corporation
333 Texas Street, Suite 2350 (71101)
P. O. Box 21990
Shreveport, LA  71120-1990
Telephone:   (318) 226-9100
Facsimile:     (318) 424-5128

**ATTORNEYS FOR CHRISTOPHER WOODARD AND STEPHANIE WOODARD ERICKSON**