UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **CHRISTOPHER WOODARD, ET AL** | **CIVIL ACTION NO.: 5:15-CV-1777** |
| **VERSUS** | **JUDGE FOOTE** |
| **WOODARD VILLA, INC.** | **MAGISTRATE JUDGE HAYES** |
| **AND** | |
| **ERNEST WOODARD** | **CIVIL ACTION NO.: 5:16-CV-1779** |
| **VERSUS** | **JUDGE HICKS** |
| **WOODARD VILLA, INC.** | **MAGISTRATE JUDGE HORNSBY** |

<u>**WOODARD VILLA, INC.'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**</u>

BETHARD & BETHARD, L.L.P.

<u>s/Benjamin T. Bethard</u>
Benjamin T. Bethard, Bar No. 31424
P.O. Box 1362
1519 Ringgold Ave.
Coushatta, La. 71019
7591 Fern Ave, Suite 1201
Shreveport, LA 71105
ben@bethardlaw.net
www.bethard.law
Phone (318) 932-4071
Attorney for Woodard Villa, Inc.

PETTIETTE, ARMAND, DUNKELMAN,
WOODLEY, BYRD & CROMWELL, L.L.P.
Edwin H. Byrd, III  #19509
400 Texas Street, Suite 400 (71101)
Post Office Box 1786
Shreveport, Louisiana 71166-1786
Ph. (318) 221-1800  Fax (318) 226-0390
Attorney for Woodard Villa, Inc.

# TABLE OF CONTENTS

| | |
|---|---|
| Table of Authorites………………………………………………………… | 3 |
| Law………………………………………………………………………… | 4 |
| Facts and Argument……………………………………………………… | 5 |
| Conclusion……………………………………………………………….. | 17 |

## Table of Authorities

LSA-R.S. 12:1-1435……………………………………………………….. 4, 5, 7

MAY IT PLEASE THE COURT:

There is no genuine issue of material fact as to (1) whether plaintiffs' claims allow for or justify withdrawal as plaintiffs have prayed for and (2) whether LSA-R.S. 12:1-1435 became effective on January 1, 2015 and does not apply retroactively. Accordingly, Defendant is entitled to summary judgment.

**LAW:**

LSA-R.S. 12:1-1435, titled "Oppressed shareholder's right to withdraw" is the sole basis for Plaintiffs' claims.

> A. If a corporation engages in oppression of a shareholder, the shareholder may withdraw from the corporation and require the corporation to buy all of the shareholder's shares at their fair value.
>
> B. A corporation engages in oppression of a shareholder if the corporation's distribution, compensation, governance, and other practices, considered as a whole over an appropriate period of time, are plainly incompatible with a genuine effort on the part of the corporation to deal fairly and in good faith with the shareholder. Conduct that is consistent with the good faith performance of an agreement among all shareholders is presumed not to be oppressive. The following factors are relevant in assessing the fairness and good faith of the corporation's practices:
>
> (1) The conduct of the shareholder alleging oppression.
>
> (2) The treatment that a reasonable shareholder would consider fair under the circumstances, considering the reasonable expectations of all shareholders in the corporation."
> Comment (d)(1)

The statute is new, effective January 1, 2015, and thus there is very little jurisprudence available interpreting the statute. However, the statute has detailed comments which assists in the interpretation of the statute.

**FACTS AND ARGUMENT:**

First, LSA-R.S. 12:1-1435 was created as part of the new Business Corporation Act, which became effective January 1, 2015. Prior to that date there was no equivalent in Louisiana. The statute is prospective only and not retroactive to actions occurring prior to January 1, 2015. Since LSA-R.S. 12:1-1435 is effective as of January 1, 2015, plaintiffs' claims should be limited to only those acts of supposed shareholder oppression occurring on or after January 1, 2015.

Second, Woodard Villa, Inc. will show below that plaintiffs' claims do not satisfy the statute and that therefore none of their claims have resulted in plaintiffs' oppression. Therefore plaintiffs are not able to withdraw in accordance therewith.

In accordance with part (B) of the statute, the Court must consider "an appropriate period of time" when determining whether oppression has occurred. In the event this Court does consider actions of Woodard Villa, Inc. prior to the effective date of the statute, Plaintiffs acquired their shares of stock on September 2, 2013 (See Exhibit A attached to the Affidavit of Lauren Richardson)[1]. Accordingly, at the most, the appropriate period of time to be addressed should be from September 2, 2013 to date (clearly plaintiffs cannot be oppressed shareholders prior to becoming shareholders). The circumstances do not support a claim of oppression.

It is undisputed that Plaintiffs did not pay anything for their shares of stock as they were donated to them.

Deposition of Ernest (Page 30:4-9)

*Q. Have you paid anything for your shares of Woodard Villa stock?*

    *A. No.*

---

[1] Plaintiffs became shareholders on September 2, 2013, upon the death of E. Scott Woodard, Sr. The shares were physically printed to reflect this change in November of 2013.

Q. *Have you had to put up anything, any money as a shareholder of Woodard Villa?*

A. No.

Deposition of Christopher (Page 24:11–16)

Q. *Did you pay any money for the shares that you own in Woodard Villa?*

A. No.

Q. Have *you paid any money as a result of owning those shares?*

A. *Just time.*

Since the time that plaintiffs were given their shares they have each received $115,000.00, which was called an "Attendance Fee",[2] and each have received dividends following totaling $158,117.18:

    a. 2014 - $55,500.31 each[3]
    b. 2015 - $32,650.82 each[4]
    c. 2016 - $69,966.05 each[5]

Plaintiffs have obviously received benefits, so seek to rely upon actions by Woodard Villa, Inc. or its founder which are trivial, immaterial, irrelevant, or non-existent, as well as claims not related to oppression that, if they occurred, would still not justify withdrawal. (These allegations are discussed further below).

Quite simply, plaintiffs simply seek to receive more dividends than they've received from Woodard Villa, Inc.

---

[2] Paragraph 33 of Complaint
[3] See Exhibit D Attached to Affidavit of Lauren Richardson
[4] See Exhibit D Attached to Affidavit of Lauren Richardson
[5] See Affidavit of Lauren Richardson

Deposition of Ernest (Page 63:19 – 23)

*Q.    If Woodard Villa were to distribute a dividend of most or all of the cash that it has, then do you believe that after that you would no longer be an oppressed shareholder?*

*A.    I believe if Woodard Villa would pay a fair dividend I would no longer be an oppressed shareholder.*

Because there is limited jurisprudence on this cause of action, the reporter's comments are particularly helpful. Comment (d)(1) of LSA-R.S. 12:1-1435 addresses this very issue and specifically states that withdrawal is not a remedy in this situation.

> Withdrawal is not justified on grounds of oppression merely because the business has not been as successful as hoped, **or because the minority's reasonable expectations have been disappointed in some way**, or even because some instances of unfairness can be shown to have occurred. (emphasis ours)

Further, as will be discussed below, plaintiffs have received substantial distributions from Woodard Villa, Inc. during the three plus years that they have owned stock.

Comments (c) and (d)(1) – (d)(5) explain what does and does not constitute oppression. Those comments are reproduced for the Courts convenience and confirm that plaintiffs have not been oppressed.

> Comment (c): This Section narrows the grounds for withdrawal from those provided in the Model Act for dissolution. Under the Model Act, a shareholder may seek dissolution on grounds of deadlock, illegality, fraud, waste or oppression. This Section retains the Model Act approach to deadlock. **However, this Section provides a withdrawal remedy only for oppression, and not for illegality, fraud or waste.** The elimination of the other grounds for relief does not mean that illegality, fraud or waste, even if directed toward the complaining shareholder, are irrelevant in determining whether oppression has occurred; they may be highly relevant. Rather, **illegality, fraud and waste are omitted as independent grounds for withdrawal to avoid the implication that simple occurrences of illegal, fraudulent, or wasteful behavior in some aspect of the corporation's operations may be enough by themselves to justify withdrawal. While illegal, fraudulent or wasteful acts are likely to justify some form of penalty or**

> **remedy in favor of an appropriate person, they do not justify the remedy of withdrawal unless, taken as a whole and in context, they amount to oppression of the complaining shareholder.**
> (emphasis ours)

One claim that plaintiffs seem to emphasize is a claim that oppression resulted from distribution of the so-called "Attendance Fees". However, plaintiffs' admissions confirm that their criticism of the payment of fees does not support a claim of oppression. Instead, their claim is based on a belief that Woodard Villa, Inc.'s acts in paying the fee to attendees, including Plaintiffs, were fraudulent and illegal.

Deposition of Ernest (Page 56:17-57:5)

Q. *So, your only real problem with the attendance fee is the potential threat from the IRS?*

    A. *I said earlier that the attendance fee was paid equally among shareholders, not based on the amount of shares. It wasn't equitably paid across as it should have been.*

Q. *And you believe that you are oppressed because of that?*

    A. *I believe I was oppressed because they committed tax fraud.*

Q. *Okay. But if the IRS comes back and blesses that whole transaction so that they say it was not tax fraud, then –*

    A. *Then I would guess that I'm not oppressed.*

Q. *Then you would say you're not oppressed by the payment of the attendance fee?*

    A. *Yes.*

Deposition of Christopher (Page 42:8-11)

> Q. Why should the payments have been classified as a dividend?
>
> A. Because we were not professional employees. I believe it was tax fraud.

Whether the Attendance Fee was a fraudulent act is not at issue in this case, and as Comment (c) specifically provides, fraud or illegality is not a grounds for withdrawal. Plaintiffs admitted that if the transaction was not fraudulent then they were not oppressed based on that circumstance. Any allegations regarding payment of the Attendance Fee cannot support a claim of oppression.

Plaintiffs have also made several other allegations that can be classified simply as allegations of waste. Aside from the fact that plaintiffs' allegations are based only on speculation and are not supported by evidence, even if considered their claims do not justify withdrawal. For example, plaintiffs' complaint alleges that Woodard Villa, Inc. improperly pays personal, non-business expenses of its president, Robert Mitchell, III. However, plaintiffs both testified that they know of no non-business expenses that Woodard Villa, Inc. pays for Robert Mitchell, III, and are only making a complaint that Woodard Villa, Inc. is paying expenses for its office space and speculation that Robert Mitchell, III sometimes uses his Woodard Villa, Inc. truck for personal reasons and sometimes uses the company ATV for his own personal use.[6]

Regarding Woodard Villa, Inc.'s paying expenses for its office space, this is simply an allegation of waste.

Deposition of Ernest (Page 52:11 – 51)
> Q. If Woodard Villa were to get an office in Ringgold, and that office costs Woodard Villa more money than what it's paying

---

[6] See Deposition of Ernest (Page 24:15 – 26:15) and Deposition of Christopher (Page 47:15–49:11)

Page **9** of **20**

> *now, would you feel that you are not oppressed?*
>
> > *A. They should do whatever's in the best financial interest of the corporation.*
>
> *Q. And if staying in the house where they are currently, and paying what they're paying, is in the best financial interest of the corporation, then do you still believe that you're being oppressed?*
> > *A. If it is in the best interest of the corporation then I would not be oppressed.*

Deposition of Chris (Page 38:19 – 23)

> *Q. If you are shown that the expenses that Woodard Villa is paying for the residence where Larene Woodard lives is less than a reasonable office space in Ringgold, then you're saying that you are not oppressed for that reason?*
>
> > *A. Yes, if it makes financial sense for the company.*

Plaintiffs' dissatisfaction with the payments by Woodard Villa or its success is not adequate. Comment (d) is also reproduced for the Court's convenience, and provides as follows:

> "The Model Act does not define the term "oppression." This Section defines the term in Subsection B in a way that combines the two leading tests of oppression used in the case law of other states, the "reasonable expectations" test and the "departure from standards of fair dealing" test. Those two tests have been incorporated into this Section to permit comparisons between cases arising under this Section and those in other jurisdictions in which oppressive behavior has been considered as grounds for relief in favor of a minority shareholder. However, the statutory definition in this Section differs in five respects from at least some versions of the oppression tests articulated by courts in other states:
>
> (1) The failure to satisfy reasonable expectations is not itself the direct test for oppressive conduct. Rather, those expectations are to be considered in determining whether the directors or others in

control have behaved in a way that is incompatible with a genuine effort to be fair to the complaining shareholder. This formulation is designed to provide a generous range of discretion to the majority owners in designing corporate policies and operations that are fair. **Withdrawal is not justified on grounds of oppression merely because the business has not been as successful as hoped, or because the minority's reasonable expectations have been disappointed in some way, or even because some instances of unfairness can be shown to have occurred. Rather, to justify withdrawal under the definition of oppression in Subsection D of this Section, the plaintiff must prove that the majority's behavior, taken as a whole over an appropriate period of time, is plainly incompatible with a genuine effort on the part of the majority to be fair to the shareholders. And the effort to be fair is to be evaluated in light of expectations that it would be reasonable for the shareholders to hold under the circumstances."** (emphasis ours)

In all candor, the language emphasized above describes the same circumstances presented here. Plaintiffs are simply unsatisfied with the success of Woodard Villa, Inc. As shown above and below, they have no real claims of oppression under this statute.

Plaintiffs are the only shareholders who purport to be dissatisfied, an important distinction. Comment (d)(2) is also instructive here regarding the interests of all shareholders:

> (2) **In determining fairness, the interests of all shareholders, not just those of the complaining shareholder, must be considered."**
> (emphasis ours)

Plaintiffs have admitted that their claims of oppression are not singular to plaintiffs, but are claims that would apply to all Class B Shareholders.

Deposition of Ernest (Page 9:10-16)

Q.  *Now I'm getting to your claim for oppression. Do you believe that you and Christopher are the only oppressed shareholders?*

    A.    *No.*

*Q.  So, you believe all of the -- would this be correct that you believe that all of the Class B shareholders are oppressed?*

*A.  Yes.*

Deposition of Christopher (Page 11:3-11)

*Q.  Do you believe that you and your brother, Ernest, are the only oppressed shareholders?*

*A.  No.*

*Q.  Do you believe that all of the Class B shareholders are oppressed?*

*A.  That is correct.*

*Q.  Do you believe that any of the Class B shareholders are any more oppressed than any other Class B shareholders?*
*A.  No.*

The other Class B Shareholders disagree with plaintiffs. See attached hereto the Affidavits of Mollie Katherine Cottrell and Kristen Cottrell Allen. Mollie Cottrell and Kristen Allen are also Class B Shareholders of Woodard Villa, Inc., who became shareholders at the same time as plaintiffs. Mollie Cottrell and Kristen Allen do not agree with plaintiffs' claims of oppression and <u>are</u> satisfied with the management, actions and distributions of Woodard Villa, Inc. Plaintiffs cannot seriously suggest that all of the Class B Shareholders are oppressed when multiple other Class B Shareholders, knowledgeable of all of the facts, specifically acknowledge that they are not oppressed.

Nor can Plaintiffs' claims regarding their lack of voting power be seriously considered. Continuing with Comment (d)(2):

> "**The majority shareholders are entitled to control the business through the exercise of their voting power**, and they are entitled as much as the minority shareholders to have their reasonable expectations respected." (emphasis ours)

Subsequent to this statute majority shareholders are still entitled to control the business. Plaintiffs' complaint regarding an absence of voting rights is simply another example of not being satisfied, but is not an example of oppression under the statute.

Deposition of Christopher (Starting on P. 22)

Q. *Okay. So, you feel that you are oppressed because ESWS, LLC owns the voting stock?*

A. *That's correct.*

Q. *So, if someone else owned the voting stock, you feel you may not be impressed -- I mean -- if someone else owned the voting stock you feel you may not be oppressed?*

A. *Yes.*

Q. *Who do you believe should own the voting stock?*

A. *I believe the voting -- the company should be an S corp and all shareholders have voting stock.*

Q. *What if -- do you feel you would be oppressed if the corporation became classified as an S corp, but retained its voting and not voting shares?*

A. *Yes.*

There is also no evidence of the absence of an effort by the majority to be fair. Comment (d)(2) also explains that the instant circumstances are not "oppression," as it cannot be seriously suggested that those circumstances are present here.

> The evaluation of challenged conduct as "oppressive" should be guided by principles appropriate to the interpretation of a contract that calls for cooperation and fair dealing from all parties in the operation of a business that entails uncertainty and risk. **A failure by the majority over an extended period of time to provide a minority investor with any reasonable participation in the benefits of a successful business will be difficult in most cases to reconcile with a genuine effort on the part of the majority to be**

> **fair to all shareholders.** However, the majority shareholders owe no duty to sacrifice their own legitimate interests as majority owners of the business, or to make payments or provide benefits to the minority investor that are out of proportion to the value of the contributions to the business by the minority investor or his predecessor in interest." (emphasis ours)

Plaintiffs cannot seriously suggest that they were not provided reasonable participation in the benefits of Woodard Villa, Inc. Instead, Plaintiffs have benefited greatly from Woodard Villa, Inc. As pointed out above, plaintiffs paid nothing for their stock. However, just fourteen days after becoming shareholders, Woodard Villa, Inc. paid each $115,000.00.[7] Since then Woodard Villa, Inc. has distributed dividends to plaintiffs each year, totaling $158,117.18 each. Clearly withdrawal is not available based on a lack of receiving benefits from Woodard Villa, Inc.

Nor have Plaintiffs been "frozen out" from participating. Comment (d)(3) addresses those circumstances:

> "The conduct of the complaining shareholder is to be taken into account in deciding whether withdrawal on grounds of oppression is warranted. While the shareholders of a closely-held corporation are commonly compensated largely through their employment by the corporation - making continued employment a reasonable expectation in many cases - shareholders are not entitled to keep their jobs regardless of the quality of their job performance. Incompetence, dishonesty or disloyalty on the part of an employee shareholder may justify the shareholder's termination as a corporate employee, and a justified termination would not by itself amount to oppression. Still, a minority shareholder does not forfeit all right to any economic benefit from his shares merely because his job performance may justify his termination as an employee. A complete freezeout of a shareholder from any participation in the benefits of ownership in the corporation could be considered oppression even if the shareholder's termination as an employee was itself justified. See, *Gimpel v. Bolstein*, 477 N.Y.S.2d 1014 (Sup. 1984)."

---

[7] See Exhibit B attached to the Affidavit of Lauren Richardson

As shown above, plaintiffs have not been completely frozen out from participating in the benefits of Woodard Villa, Inc. Thus plaintiffs cannot withdraw under this theory either.

Plaintiffs had no expectations, as they were not investors, and the actions complained of are the same actions taken prior to Plaintiffs' involvement. This is addressed in Comment (d)(4):

> "A leading case concerning "reasonable expectations" requires the plaintiff in an oppression case to prove that the conduct of the controlling shareholders has substantially defeated expectations that "objectively viewed, were both reasonable under the circumstances and were central to the petitioner's decision to join the venture." *Matter of Kemp & Beatley, Inc.*, 473 N.E.2d 1173 (N.Y. 1984). This Section embraces the "objectively reasonable under the circumstances" part of the test, but for the reasons explained in the next comment, it drops the requirement that the plaintiff prove that the expectations in question actually played some role in the plaintiff's own decision to join the corporation as a shareholder."

The key here is "reasonable expectations." Plaintiffs had none. Comment (d)(5):

> "Among the original investors, actual expectations will be highly relevant to what a shareholder would be reasonable in considering fair under the circumstances."

Plaintiffs were not original investors, so the above is not relevant. Nor are the actions challenged by Plaintiffs were different than the actions of the founding shareholders.

> But disputes within closely-held corporations commonly arise among the children of the founding shareholders, making it unlikely that the litigating shareholders' expectations will have played any role in the investment decisions that were made when the inherited shares were first purchased. **The arrangements made and practices followed by the founding shareholders could play some role in shaping what a person succeeding to the founders' shares would be reasonable in expecting.**

Another complaint involves Woodard Villa's payment of the cost for the care of Larene Peevy Woodard, the widow of the founder, E. Scott Woodard, Sr. First, plaintiffs should have reasonably expected to pay an expense such as this, as Woodard Villa, Inc. it had been paying for several years prior to plaintiffs becoming shareholders. Regardless, Woodard Villa, Inc. only paid

for Larene Peevy Woodard's care for several more months, until a trust for her benefit began paying for her care on January 1, 2014. At best this amounts to another allegation of waste, as this action did not benefit any of the majority or Class A Shareholders. Once again, this is an allegation that cannot lead to withdrawal.

Ernest Woodard's claim of oppression due to the company's assistance to Ms. Woodard for healthcare for several months is also curious, as Ernest Woodard accepted assistance from her himself when he was in need.

Deposition of Ernest Woodard (Page 19:6 – 20:9)

Q. *So, you got $5,000.00 from Mr. Scotty and $5,000.00 from Larene?*

    A. *Yes.*

Q. *And, why was it $5,000.00 from Mr. Scotty and $5,000.00 from Larene?*

    A. *I asked Big Scotty for a loan for $5,000.00; Larene gave me $5,000.00.*

Q. *And, did he -- did he have a problem giving you a loan for $5,000.00?*

    A. *No.*

Q. *And you said you paid it back in...*

    A. *Within 2 months.*

Q. *Within 2 months. Did you pay back Larene's loan?*

    A. *It was no loan; it was a gift.*

Q. *Oh, it was a gift, okay. Why was Mr. Scotty's a loan and Larene's a gift?*

    A. *I asked for a loan from Big Scotty; Larene gave me a gift.*

Q. *Did you ask Larene for a gift?*

    A. *No.*

Q. *She just gave it to you anyway?*

    A. *Yes.*

> Q. Okay.
>
>> A. It was after Hurricane Katrina; we had been displaced for 3 weeks. Our bank was closed; it was a local bank in Covington.
>
> Q. Okay. So, needless to say you never paid Larene back?
>
>> A. It was a gift.
>
> Q. That's right.
>
>> A. Right.

The practices have also changed since Plaintiffs were given their shares, an adjustment that benefited Plaintiffs. The remainder of Comment (d)(5) is also instructive.

> "But a reasonable person should expect some adjustment in those practices to occur as a result of the passing of the shares from one generation to another. The personalities, interests and skills of the second generation of shareholders may differ substantially from those that shaped the expectations and practices of the original investors. This Section allows those changed factors to be taken into account in determining the expectations that it would be reasonable for a shareholder in the plaintiff's position to hold.

For the thirty six years prior to when plaintiffs obtained their shares of stock, Woodard Villa, Inc. made no distributions whatsoever to its shareholders; Woodard Villa, Inc. paid its directors as much as $25,000 each per year; and paid for Larene Peevy Woodard's healthcare, among other things. Since plaintiffs have become shareholders, plaintiffs have received $273,117.18 each in distributions in just over three years, the directors drastically reduced their compensation until finally doing away with it all together,[8] and Woodard Villa, Inc. has stopped paying for Larene Peevy Woodard's healthcare.

Finally, and possibly the most telling sign that plaintiffs are not "oppressed" shareholders, is the fact that plaintiffs have sought to acquire <u>more</u> shares, even to the detriment of a family

---

[8] See Deposition of Ernest (Page 21:8 – 21) and Deposition of Christopher (Page 31:10 – 7)

member. Plaintiffs refused to consent to allow one desperate shareholder, their own sister, the opportunity to transfer her shares into a Trust for her benefit, and opposed the transfer in order to purchase those shares.[9] This was after plaintiffs filed this lawsuit claiming to be "oppressed." Plaintiffs cannot seriously suggest that they are oppressed shareholders while also trying to purchase more shares of the company (and unnecessarily putting a halt to something the corporation was attempting to do to help a desperate shareholder).

Deposition of Ernest Woodard (Page 65:20 – 66:13)

Q. *Okay. Can you explain to me, as how someone claiming to be oppressed, and wanting to withdraw from the corporation, why you would be interested in purchasing some more shares of Woodard Villa?*

    A. *It would increase my percentage of ownership. And, based on what the judge says it could increase my payout.*

Q. *Is there any other reason that you would want to buy –*

    A. *No.*

Q. *--her shares?*

    A. *I take that back. If we look at the ownership today, and how they're leading this company, if that was to change then I'd like to come back and revisit that question.*

Q. *But, if it were not to change, then the only reason that you would have to buy Cece's shares would be a gamble that this lawsuit would –*

    A. *Yes.*

Q. *Okay.*

    A. *I mean, you think about it; you buy them at book and you could settle at book. There's really no risk.*

---

[9] See the Affidavits of Kristen Cottrell Allen and Mollie Katherine Cottrell

Page 18 of 20

## CONCLUSION

First, this Court should only address acts of oppression that took place on or after January 1, 2015, the effective date of the statute. Second, as shown in detail above, plaintiffs' claims simply do not justify withdrawal. The bulk of plaintiffs' claims amount to allegations of fraud or waste, but not "oppression" under the statute. The remaining claims are merely speculative and certainly do not show a trend over a period of time that is oppressive to plaintiffs. Defendants have further shown that Woodard Villa, Inc. has changed its management culture since plaintiffs became shareholders, eliminating practices that plaintiffs claim are wasteful and making large distributions. Plaintiffs' claims simply do not satisfy the statute, and they should therefore not be allowed to withdraw from Woodard Villa. As such, this lawsuit should be dismissed, with prejudice, at plaintiffs' cost.

Respectfully submitted,

BETHARD & BETHARD, L.L.P.

    s/Benjamin T. Bethard
Benjamin T. Bethard, Bar No. 31424
P.O. Box 1362
1519 Ringgold Ave.
Coushatta, La. 71019
7591 Fern Ave, Suite 1201
Shreveport, LA 71105
ben@bethardlaw.net
Phone (318) 932-4071

PETTIETTE, ARMAND, DUNKELMAN,
WOODLEY, BYRD & CROMWELL, L.L.P.

Edwin H. Byrd, III   #19509
400 Texas Street, Suite 400 (71101)
Post Office Box 1786
Shreveport, Louisiana 71166-1786
Ph. (318) 221-1800  Fax (318) 226-0390
Attorney for Woodard Villa, Inc.

## **CERTIFICATE**

I hereby certify that a copy of the above and foregoing was this date been served upon all counsel of record through electronic transmittal via the Court's ECF system.

Shreveport, Louisiana, this 23rd day of January, 2017.

        s/Benjamin T. Bethard
          OF COUNSEL