# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| CHRISTOPHER WOODARD, ET AL. | CIVIL ACTION NO. 15-1777 <br> consolidated with 16-1119 |
| VERSUS | JUDGE ELIZABETH FOOTE |
| WOODARD VILLA, INC. | MAGISTRATE JUDGE KAREN HAYES |

## MEMORANDUM RULING

Pending before the Court is the Motion for Summary Judgment [Record Document 38] filed by the Defendant, Woodard Villa, Inc. ("Woodard Villa"), which prays for this Court to dismiss Plaintiffs' claims at their cost or, alternatively, limit Plaintiffs' claims to acts occurring on or after January 1, 2015. Upon consideration of the briefs filed by the parties and for the reasons stated below, Defendant's Motion for Summary Judgement is **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

The Plaintiffs, Christopher Woodard and Ernest Woodard, are owners of Woodard Villa Class B common stock. Woodard Villa is a family-owned Louisiana corporation formed by E.S. Woodard in 1977, along with his then-wife, Mollie Woodard. The company's primary business involves the ownership of land, timber, and mineral rights in Bienville Parish, Louisiana.

Woodard Villa's Articles of Incorporation provided for two classes of stock: Class A common stock and Class B common stock. Class A shares are voting shares, while Class

B shares are non-voting shares. E.S. Woodard maintained control of the Class A stock until 2011, when he formed ESWS, LLC, and transferred the shares to that company. When E.S. Woodard passed away in September 2013, his nephew, Robert Mitchell, III ("Mitchell"), and his granddaughter, Lauren Woodard Richardson ("Richardson"), became the members of ESWS, LLC. According to Plaintiffs, "control of all corporate affairs, particularly and including election of the board of directors of Woodard Villa, is vested exclusively in Mitchell and Richardson," who are currently the president and vice-president of the corporation. Record Document 45, p. 5.

Soon after the formation of Woodard Villa, the Class B stock was transferred into trusts for the benefit of E.S. Woodard's and Mollie Woodard's children and grandchildren. Plaintiffs were beneficiaries of the trusts which owned Class B shares. The trusts did not terminate until the death of E.S. Woodard in September 2013. At that time, Plaintiffs became shareholders of their Class B stock.

Plaintiffs filed this suit against Woodard Villa alleging that they are oppressed shareholders pursuant to Louisiana Revised Statute 12:1-1435.[1] This statute provides that "[i]f a corporation engages in oppression of a shareholder, the shareholder may withdraw from the corporation and require the corporation to buy all of the shareholder's shares at their fair value." La. R.S. 12:1-1435(A). The shareholder withdraws by providing written notice of withdrawal to the corporation. La. R.S. 12:1-1435(D). This withdrawal notice operates as an offer to sell that shareholder's shares back to the corporation at fair value.

---

[1] Plaintiffs filed separate suits which have since been consolidated for all purposes. See Record Document 28.

Id. If the corporation does not accept this offer within 60 days, the shareholder is permitted to file suit to enforce his right to withdraw. La. R.S. 12:1-1435(G).

Plaintiffs, believing they are oppressed shareholders under Louisiana law, initiated withdrawal proceedings in accordance with this statutory process. Woodard Villa did not accept that withdrawal notice. The Plaintiffs then filed this suit seeking an order requiring Woodard Villa to recognize their withdrawal and requiring that it pay Plaintiffs the fair value of their shares. Woodard Villa has now filed this motion for summary judgment.

## **STANDARD**

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. See Celotex, 477 U.S. at 322-323.

If the movant satisfies its initial burden of showing that there is no genuine dispute

---

[2] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

of material fact with the motion for summary judgment, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'" by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985) (internal citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986) (the court must "review the facts drawing all inferences most favorable to the party opposing the motion"). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. Little, 37 F.3d at 1075.

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

In its motion, Defendant seeks relief on two alternative grounds. First, Defendant argues that Plaintiffs' claims must be dismissed because there is no genuine dispute of material fact and Plaintiffs' allegations do not amount to oppression such that withdrawal would be warranted. Alternatively, Defendant argues that Plaintiffs' claims should be limited to only those acts of shareholder oppression which occurred on or after January 1, 2015.

**1. Limitation of Plaintiffs' Claims**

Plaintiffs' claims are brought pursuant to Louisiana Revised Statute 12:1-1435. This statute was enacted as part of the Business Corporation Act, which became effective on January 1, 2015. Act No. 328, § 1, 2014 La. Acts. Defendant argues that because the statute is substantive, Plaintiffs' claims must be limited to acts of oppression that occurred on or after January 1, 2015, the effective date of the Act. Unfortunately, there is little case law applying the statute, and none directly addressing its retroactive application. Defendant's position does appear supported by at least one district court. In Cole v. Sabine Bancshares, Inc., 2016-796 (La. App. 3 Cir. 11/16/16), 205 So. 3d 995, 996, the Louisiana Third Circuit referenced the decision of the district court to limit the plaintiff's claims to acts of oppression occurring on or after January 1, 2015. However, in the absence of a decision from the Louisiana Supreme Court, this Court is obligated to determine, "in its best judgment, how the state's highest court would resolve the issue if presented with it." Holt v. State Farm Fire & Cas. Co., 627 F.3d 188, 191 (5th Cir. 2010). The Court will thus endeavor to make what is known as an "Erie guess."

Louisiana Revised Statute 1:2 states, "No Section of the Revised Statutes is retroactive unless it is expressly so stated." Louisiana Civil Code Article 6 provides, "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." The Louisiana Supreme Court has interpreted these provisions to require a twofold inquiry: "First, we must ascertain whether the Legislature expressed in the enactment its intent regarding retrospective or prospective application. If the Legislature did so, our inquiry is at an end. If the Legislature did not, we must classify the enactment as substantive, procedural or interpretive." M.J. Farms, Ltd. v. Exxon Mobil Corp., 2007-2371 (La. 7/1/08), 998 So. 2d 16, 29 (citation omitted).

Here, this Court has not found any ascertainable expression of intent from the legislature on the retroactivity of this statute, and neither party has directed the Court to specific evidence of intent. Section 7 of Act 328, which created the statute at issue, merely states, "The provisions of this Act shall become effective on January 1, 2015." Having found no expression of intent, this Court proceeds to the second step of the inquiry- determining whether the statute is substantive, procedural or interpretive.

"Substantive laws either establish new rules, rights, and duties or change existing ones. Interpretive laws, on the other hand, do not create new rules, but merely establish the meaning that the interpretive statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes the rights and duties." St. Paul Fire & Marine Ins. Co. v. Smith, 609 So. 2d 809, 817 (La. 1992).

Defendant argues that Louisiana Revised Statute 12:1-1435 is substantive because it created a new right that did not exist previously under Louisiana law, and is therefore prospective only. Plaintiffs claim that they do not seek retroactive application of the statute, but are instead simply asking the Court to consider Defendant's conduct "over an appropriate period of time," which includes pre-January 2015 conduct. Record Document 45, p. 23. Alternatively, Plaintiffs argue the statute may be applied retroactively because it is procedural, not substantive. The Court disagrees.

Plaintiffs fail to direct the Court to any prior law which provided a shareholder with the right established by the statute at issue- to be paid the value of his shares if he proves oppression. That the right did not exist prior to this statute's enactment is supported by an article cited by both parties, <u>Model Business Corporation Act As Adopted in Louisiana</u> by Glenn G. Morris, 75 La. L. Rev. 983, 1020 (2015). In that article, the author[3] explains, "Under prior law, minority shareholders had virtually no prospect of having a court order the payment of dividends, or the employment of the plaintiff, or the buying out of the plaintiff's interest in the corporation." <u>Id.</u> The prior law "provided little protection to the interests of minority shareholders in closely held corporations. The majority shareholders in the company were capable of compensating themselves in the form of salaries and other benefits of employment by the corporation, without ever declaring a dividend or otherwise making any financial benefit of share ownership available to the minority shareholders."

---

[3] Author Glenn Morris "served as the Reporter and Chair of the Corporations Committee of the Louisiana State Law Institute, the Committee that considered and modified the Model Act for adoption in Louisiana." <u>Id.</u>

Id. at 1059. In a situation such as this, "the corporation had no obligation to buy back the minority investor's shares." Id. Other commentators have similarly noted Louisiana's prior failure to recognize the "shareholder oppression" doctrine. See Douglas K. Moll, Shareholder Oppression and the New Louisiana Business Corporation Act, 60 Loy. L. Rev. 461, 462-63 (2014). Thus, because the statute provides a new right to oppressed shareholders to withdraw and require the corporation to buy their shares at fair value, it is substantive in nature and therefore subject to prospective application only.

As to Plaintiffs' claim that this Court can consider Defendant's pre-January 2015 conduct without applying the statute retroactively, the Court finds this argument unpersuasive. The Louisiana Supreme Court analyzed retroactive application in both Anderson v. Avondale Indus., Inc., 2000-2799 (La. 10/16/01), 798 So. 2d 93, and Walls v. Am. Optical Corp., 98-0455 (La. 9/8/99), 740 So. 2d 1262.

In Anderson, the court was faced with whether Louisiana Civil Code article 2315.3, allowing recovery of punitive damages for injuries caused by specific actions, applied in a wrongful death case where the cause of action arose after the effective date of the act, but the conduct giving rise to the injuries occurred before that date. The court explained,

> In Walls, we adopted the formula set out by Planiol "for identifying the only two situations in which a law operates retroactively: [a] law is retroactive when it goes back to the past either to evaluate the conditions of the legality of an act, or to modify or suppress the effects of a right already acquired. Outside of those conditions, there is no retroactivity."

798 So. 2d at 97-98 (citing Walls, 740 So. 2d at 1267). "Under Planiol's first situation in which a law operates retroactively, when a intervening new law creates a cause of action,

and thus attaches new consequences to past events, the retroactivity event is the conduct or activity regulated." Id. at 99. The court thus ruled,

> Because former La. C.C. art. 2315.3 creates a cause of action for punitive damages for certain enumerated conduct, the application of that article to the facts of this case would be an impermissible retroactive application of the law because it would go back to the past to evaluate the conditions of the legality of the defendants' conduct, which occurred before the enactment of former La. C.C. art. 2315.3.

Id. at 101-02.

The Anderson Court was careful to distinguish its decision in Walls. Walls involved an amendment to a statute which provided tort immunity to executive officials previously not granted such immunity. 740 So. 2d 1262. The court found that application of the amended law to provide immunity for events that predated the amendment did not result in an impermissible retroactive application. 740 So. 2d at 1270. The Anderson Court noted that the statute at issue in Walls, unlike the one in Anderson, was not a statute governing conduct. See Walls, 740 So. 2d at 1267-68 ("[T]he tort immunity provided by the statute for an executive officer is based upon the individual's 'status,' and is an affirmative defense. It is not a law evaluating the conditions of the legality of the defendant's conduct . . . ."). Further, unlike in Anderson, the application of the statute in Walls would not attach new legal consequences to past acts. The court found this to be a crucial distinction. Walls, 740 So. 2d at 1268.

Here, to apply Louisiana Revised Statute 12:1-1435 to activities that occurred before January 1, 2015 would be to evaluate past conduct through the lense of the statute and

potentially attach legal consequences to those past acts. This is the type of retroactive application the Anderson Court found impermissible. Thus, the Court declines to consider alleged acts of shareholder oppression that occurred before January 1, 2015.

**2. Sufficiency of Plaintiffs' Claims**

Because Plaintiffs have filed this suit in order to enforce their right to withdraw, the central issue is whether they are oppressed shareholders within the meaning of the statute. Plaintiffs argue that they have been oppressed in two principal ways: (1) through Woodard Villa's failure to pay adequate dividends; and (2) through the misapplication and waste of corporate funds.

As to the dividends, Plaintiffs admit that they received dividends in 2015 and 2016, but argue that they were not proportional to the corporation's profits and were unreasonable in light of the corporation's retained earnings. Specifically, Plaintiffs claim that in 2015 the corporation generated $411,756 in net revenue, held approximately $3.5 million in liquid assets, but only paid a dividend of $32,650.82. Similarly, Plaintiffs claim that as of November 2016, the corporation generated $457,291 and held over $4.1 million in liquid assets, yet paid Plaintiffs dividends of $69,966.05. Plaintiffs dispute the adequacy of the dividends they received.

Plaintiffs raise a number of issues regarding the misapplication and waste of funds. First, they challenge Woodard Villa's charitable donations. In 2015, the corporation donated $40,000 to charitable organizations. Plaintiffs argue that this decision, made without their input, was an improper diversion of funds for non-business purposes. Next, Plaintiffs claim

potentially attach legal consequences to those past acts. This is the type of retroactive application the Anderson Court found impermissible. Thus, the Court declines to consider alleged acts of shareholder oppression that occurred before January 1, 2015.

**2. Sufficiency of Plaintiffs' Claims**

Because Plaintiffs have filed this suit in order to enforce their right to withdraw, the central issue is whether they are oppressed shareholders within the meaning of the statute. Plaintiffs argue that they have been oppressed in two principal ways: (1) through Woodard Villa's failure to pay adequate dividends; and (2) through the misapplication and waste of corporate funds.

As to the dividends, Plaintiffs admit that they received dividends in 2015 and 2016, but argue that they were not proportional to the corporation's profits and were unreasonable in light of the corporation's retained earnings. Specifically, Plaintiffs claim that in 2015 the corporation generated $411,756 in net revenue, held approximately $3.5 million in liquid assets, but only paid a dividend of $32,650.82. Similarly, Plaintiffs claim that as of November 2016, the corporation generated $457,291 and held over $4.1 million in liquid assets, yet paid Plaintiffs dividends of $69,966.05. Plaintiffs dispute the adequacy of the dividends they received.

Plaintiffs raise a number of issues regarding the misapplication and waste of funds. First, they challenge Woodard Villa's charitable donations. In 2015, the corporation donated $40,000 to charitable organizations. Plaintiffs argue that this decision, made without their input, was an improper diversion of funds for non-business purposes. Next, Plaintiffs claim

that Woodard Villa's directors have paid themselves excessive salaries and fees. Specifically, Plaintiffs claim that from 2011 to 2015, the directors paid themselves fees totaling $225,000, and these fees are excessive in light of the fact that the directors meet twice each year.[4] Plaintiffs further argue that Mitchell's salary of $60,000 per year as General Manager of the corporation is improper and excessive. They claim that Mitchell's only responsibility is to manage a large pine tree farm and that, since March 2015, he has not physically performed any work on the property himself.

Plaintiffs additionally argue that Woodard Villa has improperly paid the household and personal expenses of Mr. Woodard's widow. Woodard Villa argues that the residence of Mr. Woodard's widow contains the company's headquarters, but Plaintiffs claim that the "headquarters" essentially consists of a one room office within that home. The office comprises approximately 20% of the residence, but Plaintiffs claim that 100% of the home's utilities, insurance, telephone, and newspaper subscriptions are paid by Woodard Villa. They claim that this amounts to a total of $70,566 over a six year period, or approximately $11,761 per year. Record Document 45, p. 18-19.

Finally, Plaintiffs claim that they requested access to the books and records of Woodard Villa in 2013, but were told that they could only inspect the books and records if they signed a confidentiality agreement. Because they refused, they were prevented from accessing the records until they filed this suit. Record Document 45, p. 8.

---

[4] Mitchell's deposition testimony suggests the directors did not receive fees in 2015. Record Document 45-4, p. 49-50. Defendant additionally asserts that no directors' fees were paid in 2015 or 2016.

Defendant argues that it is entitled to summary judgment on Plaintiffs' claims because, even if true, they do not suffice to justify withdrawal. It argues that not only are Plaintiffs' disappointed expectations regarding dividends not grounds for withdrawal, their suggestion that the dividends were not proportional to Defendant's profits is deceiving. Defendant notes that Plaintiffs have represented the dividends by reference to the amount each of them received, rather than the total dividends distributed. Defendant states that it distributed dividends totaling $280,000 in 2015, and that this amounted to over 60% of its income that year. Similarly, in 2016, Defendant distributed $600,000 in dividends, more than its net revenue that year. The figures quoted by Plaintiffs, $32,650.82 and $69,966.05, were amounts each Plaintiff received for his proportional share of stock.

Regarding Plaintiffs' complaints related to payment of expenses for the Woodard home, Defendant argues that this merely amounts to an allegation of waste, which is not alone grounds for withdrawal. Defendant provides the affidavits of two other Class B shareholders who claim that they do not feel oppressed by the actions and management of Woodard Villa. The affidavits specifically state that the affiants do not feel oppressed by the payment of expenses at the building where the office is located or by the payment of Mitchell's salary. Record Document 38-4, pp. 10, 15. In response, Plaintiffs note that another Class B shareholder, Stephanie Woodard Erickson, was an original Plaintiff in this suit and made the same allegations of oppression against Woodard Villa, though she has since settled her claims and is no longer a shareholder.

Defendant additionally argues that Plaintiffs cannot provide any evidence suggesting

that it has not dealt fairly with its shareholders. It notes that Plaintiffs paid nothing for their stock, yet have benefitted financially from their status as shareholders. Finally, Defendant argues that Plaintiffs' efforts to acquire more shares of Woodard Villa after the filing of this lawsuit shows that they are not oppressed shareholders. Defendant declares, without supporting case law, that this action is "fatal" to Plaintiffs' claims. While the Court agrees that Plaintiffs' actions are certainly relevant, this fact alone is not dispositive.

"A corporation engages in oppression of a shareholder if the corporation's distribution, compensation, governance, and other practices, considered as a whole over an appropriate period of time, are plainly incompatible with a genuine effort on the part of the corporation to deal fairly and in good faith with the shareholder." La. R.S. 12:1-1435(B). Both the "conduct of the shareholder alleging oppression" and the "treatment that a reasonable shareholder would consider fair under the circumstances, considering the reasonable expectations of all shareholders in the corporation" are relevant in assessing the fairness and good faith of the corporation's practices. Id. This definition is intended to combine the two leading tests for oppression applied by courts in other states, the "reasonable expectations" test and the "departure from standards of fair dealing" test. La. R.S. 12:1-1435, 2014 Revision Comment (c). The Revision Comments further explain,

> The failure to satisfy reasonable expectations is not itself the direct test for oppressive conduct. Rather, those expectations are to be considered in determining whether the directors or others in control have behaved in a way that is incompatible with a genuine effort to be fair to the complaining shareholder. This formulation is designed to provide a generous range of discretion to the majority owners in designing corporate policies and operations that are fair. Withdrawal is not justified

> on grounds of oppression merely because the business has not been as successful as hoped, or because the minority's reasonable expectations have been disappointed in some way, or even because some instances of unfairness can be shown to have occurred. Rather, . . . the plaintiff must prove that the majority's behavior, taken as a whole over an appropriate period of time, is plainly incompatible with a genuine effort on the part of the majority to be fair to the shareholders. And the effort to be fair is to be evaluated in light of expectations that it would be reasonable for the shareholders to hold under the circumstances.

Id. at (c)(1).

The determination of whether Woodard Villa has engaged in oppression will necessarily involve evaluating each of Plaintiffs' complaints individually and collectively to determine whether they are "plainly incompatible with a genuine effort" on the part of Woodard Villa to deal fairly with its shareholders. For example, Plaintiffs have made multiple claims that could be characterized as allegations of waste. These allegations include: Woodard Villa pays Mitchell an excessive salary in light of his job duties; Woodard Villa continues to make improper charitable contributions without input from the shareholders and despite Plaintiffs' complaints; and Woodard Villa continues to pay the expenses of Ms. Woodard's home, which are disproportional to the amount of resources used by the corporation. While acts of illegality, fraud, or waste may be relevant in determining whether oppression has occurred, such acts themselves are not grounds for withdrawal unless "taken as a whole and in context, they amount to oppression." La. R.S. 12:1-1435, 2014 Revision Comment (c). Thus, while not conclusive, these allegations are certainly relevant and factor into the determination of whether Defendant's conduct was

oppressive. They must be considered together with Plaintiffs' other allegations, and also alongside Defendant's accusations that Plaintiffs attempted to acquire additional shares of Woodard Villa, even after alleging oppression.

There are some relevant factors involving elements that could favor both sides of this dispute. For example, two Class B shareholders have claimed that they are not oppressed, while a former Class B shareholder previously made the same oppression allegations as Plaintiffs. See La. R.S. 12:1-1435, 2014 Revision Comment (d)(2) ("In determining fairness, the interests of all shareholders, not just those of the complaining shareholder, must be considered."). Additionally, while Woodard Villa may have paid excessive directors' fees in 2015, it may have ceased paying directors' fees in an attempt to quell Plaintiffs' concerns, which could suggest an effort to deal fairly with its shareholders. Considering the evidence in the light most favorable to Plaintiffs, a reasonable jury could differ as to whether Defendant's conduct amounts to oppression.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is hereby **GRANTED IN PART** and **DENIED IN PART.** As to the limitation of Plaintiffs' claims to acts of shareholder oppression on or after January 1, 2015, Defendant's motion is **GRANTED**. As to the dismissal of Plaintiffs' claims, Defendant's motion is **DENIED**.

**THUS DONE AND SIGNED** this 16th day of May, 2017, in Shreveport, Louisiana.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE